**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| OLD REPUBLIC INSURANCE CO., | ) | |
| | ) | |
| Plaintiff/Counter-Defendant, | ) | |
| | ) | |
| v. | ) | No. 15-CV-03524 |
| | ) | |
| KENNY CONSTRUCTION CO., | ) | Judge John J. Tharp, Jr. |
| | ) | |
| Defendant/Counter-Plaintiff. | ) | |

## MEMORANDUM OPINION AND ORDER

This is an insurance dispute arising from Chicago's Deep Tunnel flood control project.[1]

Kenny Construction Company was the general contractor on a portion of the project for the

United States Army Corps of Engineers. Kenny hired Meccon Industries, Inc. as a subcontractor

and executed a subcontract requiring Meccon to furnish Commercial General Liability insurance

certificates listing Kenny as an additional insured. Meccon procured insurance from Old

Republic. Years after the relevant portion of the project was completed, a leak was discovered

and the Army Corps of Engineers issued a decision holding Kenny and the project's designer

jointly and severally liable for damage attributed to Meccon's use of an alternative part (a clamp)

in completing its work. Old Republic then filed suit, seeking a declaratory judgment that it had

no duty to defend or indemnify Kenny under the Meccon-Old Republic insurance policies.

Kenny filed a counterclaim seeking a declaration that Old Republic does in fact have a duty to

defend and indemnify it. Both parties have moved for summary judgment. After due

---

[1] "The Deep Tunnel is intended to 'bottle a rainstorm' by channeling storm water that overflows from sewers into the system's tunnels, which are up to 33 feet in diameter. The tunnels will connect with massive reservoirs, which are to be finished in the early 21st Century. When complete, the system will have a capacity of 41 billion gallons." Casey Bukro, *Deep Tunnel Opens*, CHICAGO TRIBUNE (Jan. 3, 2008) http://www.chicagotribune.com/news/nationworld/ politics/chi-chicagodays-deeptunnel-story-story.html.

consideration, the Court concludes that although Old Republic has no duty to defend Kenny, Old Republic is nonetheless obligated to indemnify Kenny.

## BACKGROUND

The United States Army Corps of Engineers (USACE) was responsible for the design and construction of the Chicago Underflow Plan McCook Distribution Tunnel System Project in Chicago. USACE hired MWH Global to design a flood control system for the McCook Project and hired Kenny Construction Corporation as the project's general contractor. Kenny subsequently entered into a subcontract with Meccon Industries, Inc. to perform mechanical work and furnish materials for the project.

The subcontract between Kenny and Meccon contains two provisions discussing Meccon's insurance obligations. Paragraph 1.H states:

> Submittal of the subcontractor's evidence of insurances shall include the contractor, the owner and any other additional insureds as required per the Insurance Requirement Sheet attached hereto. Subcontractor expressly understands and agrees that its insurance shall serve as primary and non-contributory and the additional insured's insurance will only apply in excess of any and all coverage provided by the subcontractor, notwithstanding any policy language or endorsement(s) to the contrary.

Subcontract, ECF No. 1-1. Notwithstanding the reference to it in the subcontract, neither Kenny nor Meccon has been able to locate the Insurance Requirement Sheet, although Kenny has submitted a sample Insurance Requirement Sheet. The sample Insurance Requirement Sheet instructs a generic subcontractor to "state all information below on your certificate." Sample Ins. Requirements Sheet, ECF No. 54-3. One piece of the information required by the sample form reads: "Additional Insureds: Kenny Construction Company." *Id.*

The second subcontract provision detailing Meccon's insurance obligations is Article 11, which reads:

The Subcontractor will obtain and submit to the General Contractor, before any work is performed under this contract, certificates from the subcontractor's insurance carriers indicating coverage for the following: . . . Commercial General Liability to cover the indemnity agreement in Article 10a through 10c above, although the existence of insurance shall not be construed as limiting the liability of the Subcontractor under this contract. . . . The certificates and the insurance companies shall be subject to the approval of the General Contractor and shall contain provisions for 30 days prior notice of any important change in or cancellation of the insurance. Should the Sub-contractor fail to submit the certificates required, the General Contractor may take such steps as deemed necessary to provide proper protection and charge all costs incurred to Subcontractor.

Subcontract, ECF No. 1-1.

Meccon procured Commercial General Liability insurance policies ("CGL policies") from Old Republic Insurance Co. from 2002 to 2010, and provided corresponding insurance certificates to Kenny between 2002 and 2007. The certificates each list Kenny as an additional insured under the policies. Nonetheless, the certificates also note, in capital letters, that they were "issued as a matter of information only and confer[] no rights upon the certificate holder." Ins. Certificates, ECF No. 54-4. Each certificate further notes that it "does not amend, extend or alter the coverage afforded by the policies below." *Id*. The reverse side of the certificates include further disclaimers to the effect that the certificates do not control the coverage provided by the applicable policies and that the designation of the certificate holder (Kenny) "does not confer rights to the certificate holder in lieu of" an additional insured endorsement on the policy. *Id.*

The relevant Old Republic policies do not expressly identify Kenny as an additional insured. They list Meccon as a named insured and contain endorsements defining "[a]ll persons or organizations as required by written contract or agreement" to be additional insureds. Old Republic-Meccon Policies, ECF Nos. 25-29. Although the policies contain separate endorsements for ongoing operations and completed operations coverage, the definition of additional insureds is identical in each endorsement.

As for coverage, under the policies, Old Republic agreed to pay "those sums that the insured becomes legally obligated to pay as damages because of . . . 'property damage' to which this insurance applies." *Id*. Old Republic also had "the right and duty to defend the insured against any 'suit' seeking those damages." *Id*. The policies contain an exclusion for damages that arise "by reason of the assumption of liability in a contract or agreement," although Old Republic would still be required to pay those damages that would have arisen "in the absence of the contract or agreement." *Id*.

During the course of Meccon's work on the McCook Project, it twice submitted a variation request to Kenny to substitute an alternative part known as a Smith-Blair clamp for parts called for by the project's original plans. On both occasions, Kenny sent the request to USACE and MWH Global, both of which approved the changes. Meccon subsequently installed the Smith-Blair clamps after each approval. The project moved forward without incident for some time, and Kenny substantially finished its work on the project in April 2009. In August 2010, USACE issued a final inspection and acceptance letter to Kenny indicating that all construction work had been completed in accordance with contractual requirements and that "no deficiencies remained."

Notwithstanding issuance of the final inspection and acceptance letter to Kenny, USACE had discovered in October 2008 leaks in the concrete monolith allowing Combined Sewer Overflows ("CSO's") to escape and corrode various mechanical and electrical equipment within the Tunnel complex. Over the course of the next two years, USACE and various contractors investigated the cause of the leaks and concluded that the use of the Smith-Blair clamp in lieu of welded joints had caused the problem because the clamps were not rated to withstand the operating fluid pressures within the Tunnel; original specifications called for minimum pressure

ratings for couplings, flanges, and valves of 300 psi, but the Smith-Blair clamps were rated for a maximum pressure of 40 psi. After taking remedial action to solve the problem, USACE issued a contracting officer's "Final Decision" in September 2014 concluding that MWH Global and Kenny were jointly and severally liable for damages caused by "negligent submittal and approval of the variation request to use the Smith Blair clamp in the McCook Distribution Tunnel System." Final Decision 1, ECF No. 54-5. The Final Decision awarded $11,317,141.76 in property damages to the USACE. Kenny appealed the Final Decision to the Board of Contract Appeals. Before the appeal was resolved, Kenny and USACE settled, with Kenny agreeing to pay USACE $100,000. Settlement Agreement, ECF No. 84-1.[2]

After being notified of the Final Decision, Old Republic filed this action seeking a declaratory judgment that it had no duty to defend or indemnify Kenny with regard to the Final Decision. Kenny filed a counterclaim seeking a declaratory judgment that Old Republic has a duty to defend and indemnify Kenny under the policies. Old Republic and Kenny now each move for summary judgment.

## DISCUSSION

Under Illinois law, the court's "primary duty in construing an insurance contract is to ascertain and give effect to the intentions of the parties as expressed in the agreement." *Westfield Ins. Co v. FCL Builders, Inc.*, 407 Ill. App. 3d 730, 733, 948 N.E.2d 115, 118 (Ill. App. Ct. 2011). "If insurance policy terms are clear and unambiguous, they must be enforced as written." *Id.* A mere disagreement over the meaning of a policy term does not render it invalid; "[r]ather,

---

[2] After briefing on the parties' summary judgment motions was completed, the parties moved to supplement the record to include the settlement agreement between Kenny and USACE and accompanying stipulated facts. ECF No. 84. That motion is granted. The court includes the settlement agreement and additional stipulated facts in the summary judgment record.

an ambiguity will be found where the policy language is susceptible to more than one interpretation." *Id*. In essence, "the principles involved in the interpretation and construction of insurance contracts are the same as those involved in construing other contracts." *Carey v. Am. Family Brokerage, Inc.*, 391 Ill. App. 3d 273, 278, 909 N.E.2d 255, 260 (Ill. App. Ct. 2009). *See also Schuchman v. State Auto Property and Cas. Ins. Co.*, 733 F.3d 231, 235 (7th Cir. 2013) ("[I]n construing the policy, our primary objective is to ascertain and give effect to the parties' intentions as expressed by the words of the policy. Like any contract under Illinois law, an insurance policy is construed according to the plain and ordinary meaning of its unambiguous terms.") (internal citations and quotation marks omitted).

Old Republic argues that under the terms of its insurance policies with Meccon, Kenny is not an additional insured, relieving Old Republic of the obligation to defend and indemnify Kenny. It maintains that Kenny is not a "person[] or organization[] [] required by written contract or agreement" to be an additional insured because the Kenny-Meccon subcontract did not require Meccon to make Kenny an additional insured on its CGL policy but required only that Meccon provide Kenny with certificates of insurance listing Kenny as an additional insured. And pointing to the certificates it provided, Old Republic maintains that they were informational only and "confer[] no rights upon the certificate holder." ECF 54-4. Old Republic also maintains that even if Kenny is an additional insured under the policy, it owes no duty to defend or indemnify Kenny in the present case due to a variety of other provisions and exclusions in the Meccon-Old Republic insurance policy. The court addresses each of these arguments in turn.

## I.     Is Kenny An Additional Insured?

In arguing that Kenny is not an additional insured under the Meccon-Old Republic CGL policy, Old Republic principally relies on *West Bend Mut. Ins. Co. v. Athens Const. Co., Inc.*,

2015 IL App (1st) 140006, 29 N.E.3d 636, 645 (Ill. App. Ct. 2015), where the court considered a subcontractor's insurance policy that similarly defined an additional insured as "any person or organization whom you are required to add as an additional insured on this policy under a written contract or written agreement." *Id*. at 644. The court concluded that the subcontract between the general contractor and the subcontractor did not require the general contractor to be an additional insured on the subcontractor's policy because it merely required the subcontractor to provide a certificate of insurance listing the general contractor as an additional insured. *Id*. at 645. Requiring the provision of a certificate of insurance, according to the *West Bend* court, is distinct from requiring a subcontractor to purchase an actual insurance policy listing the general contractor as an additional insured. Because the subcontract in *West Bend* required only the former, the court determined that the general contractor was not required by written contract to be an additional insured on the subcontractor's insurance policy, and therefore was in fact not an additional insured.

Meccon's insurance policies contain a materially identical provision defining additional insureds as those entities "required by written contract or agreement" to be additional insureds. The written subcontract between Kenny and Meccon, in turn, features two relevant provisions outlining Meccon's insurance obligations. Article 11 of the subcontract—like the subcontract at issue in *West Bend*—explicitly requires the subcontractor to provide only certificates—and not policies—of insurance to the general contractor, in this case Kenny: "The Subcontractor will obtain and submit to the General Contractor, before any work is performed under this contract, certificates from the subcontractor's insurance carriers indicating coverage for . . . Commercial General Liability." That Article 11 requires Meccon to certify that it had CGL insurance can only be reasonably understood as requiring that Meccon actually have such coverage. By its plain

language, then, Article 11 requires that Meccon carry CGL insurance and provide the corresponding certificates of insurance to Kenny.

That by means of Article 11 Kenny required Meccon to carry CGL coverage, however, does not necessarily establish that Meccon was required to name Kenny as an additional insured on its CGL policies. Article 11 says nothing about Meccon's obligations with regard to additional insureds. The only reference to additional insureds contained in the subcontract is included in Paragraph 1.H: "Submittal of the subcontractor's evidence of insurances shall include the contractor, the owner and any other additional insureds as required per the Insurance Requirement Sheet attached hereto." Subcontract, ECF No. 1-1. Relying on *West Bend*, Old Republic contends that 1.H does not require that Meccon name the contractor (*i.e.*, Kenny) as an additional insured on its CGL policy, but only that Meccon indicate Kenny's status on the "evidence of its insurances" that it was required to submit to Kenny. *West Bend* supports this argument because it held that the requirement to identify an entity as an additional insured on a certificate of insurance "does not serve as evidence of the parties' intent to name [that entity] as an additional insured, given that the actual, plain language of the subcontract does not contain such a requirement." *West Bend*, 29 N.E.3d at 645. And here, the only proof of insurance Meccon was required to provide to Kenny was an insurance certificate.

But that is not the end of the inquiry. The operative issue here is not the form of the showing Meccon was required to make to Kenny to prove that it had sufficient insurance; it is whether the text of the subcontract required Meccon to make Kenny an additional insured on Meccon's CGL policy. And as to that question, Paragraph 1.H's "plain meaning" is somewhat elusive. The provision certainly can be read as imposing that requirement. Specifically, Paragraph 1.H notes that submittal of Meccon's "evidence of insurances shall include the

contractor, the owner and any *other* additional insureds as required per the Insurance Requirement Sheet" (emphasis added). The phrase "other additional insureds" implies that the preceding entities—the contractor and the owner—*are also* additional insureds under Meccon's CGL policy. Indeed, concluding that Kenny—"the contractor"—is not a required additional insured would suggest that the court should read the word "other" out of the contract, a disfavored practice.

Two factors, however, pull in the other direction and suggest that the intent of this provision is not to require Meccon to make Kenny an additional insured. First, to conclude solely from the phrase "other additional insureds" that Kenny is a required additional insured is a bit like trying to squeeze an elephant into a mousehole[3]—that is, to conclude that a substantial contractual obligation was intended on the basis of an indirect and cryptic term tucked away in a portion of the text (the "General Conditions" section) that sets forth a variety of unrelated obligations rather than being stated plainly in a provision, like Article 11, that expressly addresses insurance requirements. It seems somewhat implausible to infer that, if status as an additional insured on Meccon's CGL policy was important to Kenny, it would rely on subtle implications teased from context rather than a straightforward statement. If Kenny wanted to be an additional insured, why didn't it just say so?

It is also unclear whether the phrase "as required per the Insurance Requirement Sheet" modifies each of "the contractor, the owner and any other additional insureds" or only "any other additional insureds." If the former, then the contractor's status as an additional insured would be

---

[3] *Whitman v. Am. Trucking Associations*, 531 U.S. 457, 468 (2001) ("Congress, we have held, does not alter the fundamental details of a regulatory scheme in vague terms or ancillary provisions—it does not, one might say, hide elephants in mouseholes."). *See also, e.g., Gallo v. Moen Inc.*, 813 F.3d 265, 269 (6th Cir.), cert. denied, 137 S. Ct. 375 (2016) (applying this canon to contractual interpretation).

determined by the contents of the Insurance Requirement Sheet (which, again, neither party can find). If the latter, the implication is that the contractor is an additional insured, and "other additional insureds" are listed on the Insurance Requirement Sheet. The language of Paragraph 1H therefore permits competing inferences about whether Kenny is a required additional insured, rendering the subcontract ambiguous.

Because Paragraph 1.H is ambiguous as to whether Kenny is a required additional insured, the court may look to parol evidence to determine the intent of the parties. *Quake Const., Inc. v. Am. Airlines, Inc.*, 141 Ill. 2d 281, 289, 565 N.E.2d 990, 994 (Ill. 1990). The sample Requirements form Kenny produced in lieu of the actual form provides some evidence suggesting that Kenny likely was listed on the actual form as an additional insured, but more telling are the certificates of insurance provided by Meccon which represent, year after year, that Kenny was, in fact, an additional insured. Although insurance certificates containing a disclaimer indicating that they do not affect the terms of the underlying insurance policy have no binding force, insurance certificates may serve as evidence of the intent of the parties to a subcontract where the terms of the subcontract are ambiguous. *See West Bend Mut. Ins. Co. v. DJW-Ridgeway Bldg. Consultants, Inc.*, 2015 IL App. (2d) 140441, ¶ 30, 40 N.E.3d 194, 204 (Ill. App. Ct. 2015). Here, the insurance certificates repeatedly provided by Meccon and accepted by Kenny—each of which indicated that Kenny was an additional insured under the Meccon-Old Republic CGL policy—demonstrate the intent of Meccon and Kenny that the subcontract required Kenny to be an additional insured on Meccon's CGL policy. The court can conceive of no reason why Kenny would be listed as an additional insured on each insurance certificate unless the parties intended a contractual requirement to that effect; the additional insured representation has no value to Kenny if not true. Indeed, Old Republic puts forth no evidence

suggesting otherwise and offers no rationale for why Kenny would have wanted a certificate of insurance that was meaningless. It relies exclusively instead on what it incorrectly perceives to be the unambiguous text of the subcontract to support its position.[4]

Consequently, the court concludes that the contract must be construed to require that Meccon name Kenny to be an additional insured under the subcontract. And since Kenny is therefore an "organization[] . . . required by written contract or agreement" to be an additional insured, it qualifies as an additional insured under the Meccon-Old Republic CGL policy.

## II.     Is the Final Decision Proceeding a "Suit"?

Next, Old Republic argues that it neither has the duty to defend nor the duty to indemnify Kenny because the USACE Final Decision and subsequent appeal are not "suits" as contemplated by the CGL policies. The policies note:

> We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages to which this insurance does not apply. We may, at our discretion, investigate any "occurrence" and settle any claim or "suit" that may result.

Old Republic-Meccon Policies, ECF Nos. 25-29. "Suit," in turn, is defined as:

> A civil proceeding in which damages because of "bodily injury," property damage" or "personal and advertising injury" to which this insurance applies are alleged. "Suit" includes:

---

[4] Old Republic does assert that the parol evidence suggests that Meccon was merely required to provide Kenny with an insurance certificate listing Kenny as an additional insured, as opposed to requiring Kenny be an additional insured on Meccon's CGL policy. But again, the question is not what kind of proof of insurance Meccon was required to provide; the question is whether the parol evidence suggests that the parties intended for Kenny to be a required additional insured under the subcontract. And the court can discern no reason why Kenny would require Meccon to provide such certificates—and why Meccon actually would provide the certificates—if there was no mutual intent that Kenny be named as an additional insured on an actual CGL policy.

> a. An arbitration proceeding in which such damages are claimed and to which the insured must submit or does submit with our consent; or
>
> b. Any other alternative dispute resolution proceeding in which such damages are claimed and to which the insured submits with our consent.

*Id.*

The court agrees with Old Republic that the Final Decision and appeal therefrom are not "suits" under the CGL policy. As a backdrop, both parties recognize that under Illinois law, absent a definition, the word "suit" in an insurance policy refers to a formal proceeding in a court of law. *Lapham-Hickey Steel Corp. v Protection Mut. Ins. Co.*, 166 Ill. 2d 520, 532, 655 N.E.2d 842, 847-48 (Ill. 1995). One of the *Lapham-Hickey* court's justifications for interpreting the policy at issue in such a fashion was that the policy separately used the terms "suit" and "claim," and concluded that those words must have different meanings. *Id.* A "suit," according to the *Lapham-Hickey* court, necessarily refers to a formal proceeding in a court of law, lest it merge with the broader term "claim," which refers to a wider array of proceedings. *Id.* Here too, the CGL policy refers to both "suits" and "claims," and indicates that Old Republic only has a duty to defend against certain "suits." Illinois law, therefore, favors Old Republic's narrower interpretation of the word "suit."

Notwithstanding Kenny's argument to the contrary, the policies' definition of "suit" does not upset this conclusion. Were "suit" defined merely as a "civil proceeding," then perhaps the court would conclude that a "suit" is broad enough to encompass USACE's Final Decision process. But here, the CGL policies include clear limitations on the kinds of alternative dispute resolution mechanisms that qualify as "suits": it notes that a suit "includes . . . [a]ny other alternative dispute resolution proceeding in which such damages are claimed and to which the

insured submits with our consent." Old Republic-Meccon Policies, ECF Nos. 25-29. Although the word "include" in a contractual definition typically signifies that the examples that follow expand upon the preceding general definition, two factors here counsel against such an interpretation in this case. First, if the court concluded that a "suit" is broad enough to include all civil proceedings in which the relevant damages are claimed, it would have to read the phrase "and to which the insured submits with our consent" out of the contract, or otherwise render it meaningless. There is no reason a drafter would identify explicit limitations on what alternative dispute resolution mechanisms constitute a "suit" if those limitations were overridden by the definition's general description of a "suit." Second, the "alternative dispute resolution" clause itself functions as a residual or catch-all provision designed to capture the outer limits of what constitutes a "suit." This suggests that the ADR provision builds on—and does not merely describe—the general definition of "suit." Consequently, the court concludes that under the CGL policy, a "suit" includes a formal proceeding in a court of law, as well as those "alternative dispute resolution proceedings . . . to which the insured submits with [Old Republic's] consent." Old Republic-Meccon Policies, ECF Nos. 25-29. Kenny does not suggest that the Final Decision process constitutes a formal proceeding in a court of law, and the record is devoid of evidence that Old Republic consented to the Final Decision process. The court therefore concludes that the Final Decision process is not a "suit" under the CGL policy. It follows as well that the appeal proceeding is also excluded from the definition of "suit" in the CGL policy.

Under the CGL policy, Old Republic has "the duty to defend the insured against any 'suit' seeking [covered] damages." Old Republic's duty to defend is therefore contingent on the existence of a "suit." Because the Final Decision process is not a "suit," Old Republic had no duty to defend Kenny with respect to the issuance of the USACE Final Decision, and has no such

duty with respect to the appeal of that decision. But Old Republic goes further, arguing that the absence of a suit means that Old Republic has no duty to indemnify Kenny. In so doing, Old Republic fails to point to any contractual language similarly hinging its indemnity obligation on the existence of a "suit." Instead, Old Republic cites the Illinois Supreme Court's decision in *Crum & Forster Managers Corp. v. Resolution Trust Corp.*, 156 Ill. 2d 384, 398 620 N.E.2d 1073, 1081 (Ill. 1993), for the broad proposition that "where there is no duty to defend, there will be no duty to indemnify." Although this maxim is facially friendly to Old Republic's position, the Seventh Circuit has squarely rejected its application in circumstances like those present here, where no formal lawsuit has been filed in a court of law and separate contractual provisions trigger the duties to defend and indemnify. *See Keystone Consolidated Industries, Inc. v. Employers Ins. Co. of Wausau*, 456 F.3d 758, 761-62 (7th Cir. 2006); *Sokol & Co. v. Atlantic Mut. Ins. Co.*, 430 F.3d 417, 421 (7th Cir. 2005).[5] *Crum & Forster* concerned an insurer's extra-

---

[5] In interpreting *Crum & Forster* to stand for this broad proposition, Old Republic repeats the "mistake"—which the Seventh Circuit identified in *Sokol*—of failing to read the Illinois Supreme Court's ruling in context. Given the clear statement and explanation in *Sokol*, and its confirmation in *Keystone*, Old Republic should not have advanced the same erroneous argument here; neither *Keystone* nor *Sokol* are difficult to locate when one follows up on the "negative history" citations to the *Crum & Forster* case. Old Republic's mistake, however, may be explained by the fact that several years after *Keystone* and *Sokol*, the Seventh Circuit repeated the broad language of *Crum & Forster* without qualification in *Health Care Industry Liability Ins. Program v. Momence Meadows Nursing Center, Inc.*, 566 F.3d 689, 693 (7th Cir. 2009). There, the court of appeals cited *Crum & Forster* (but not its own prior decisions in *Keystone* and *Sokol*) for the broad proposition that "the duty to defend subsumes the duty to indemnify. Holding that an insurer has no duty to indemnify therefore follows inexorably from holding that an insurer has no duty to defend." This statement was dicta, however, because it was not necessary to decide the issue before the court. Further, that case did not involve the situation presented here, where the duty to defend is subject to a contractual limitation that does not extend to the duty to indemnify. Indeed, the *Momence* panel distinguished another case, *Premcor USA, Inc. v. American Home Assurance Co.*, 400 F.3d 523 (7th Cir.2005), acknowledging that it was "one of the rare cases where the duty to defend and the duty to indemnify are independent of each other." There, the *Momence* court explained, the umbrella insurance policy at issue did not obligate the secondary insurer to defend the insured because the primary insurer's policy provided unlimited defense costs. Nevertheless, the umbrella insurer was obligated to indemnify

contractual duty to defend an insured in a lawsuit; because under Illinois law such a duty arises where the underlying claims *potentially* fall within the scope of the policy, and the duty to indemnify arises only where the underlying claims *actually* fall within the scope of the policy, the Illinois Supreme Court concluded in *Crum & Forster* that there could be no duty to indemnify where the claims at issue are not even potentially within the policy's coverage. But that is not the case here, where Old Republic avoids a duty to defend not because the claims are not potentially within the scope of its policies' coverage but because the policies limit its duty to defend to particular types of proceedings (*i.e.,* "suits"). And indeed, in *Keystone* and *Sokol*, the Seventh Circuit recognized that the duty to indemnify is not so neatly nested within the duty to defend where the latter is contractually defined. *Keystone*, 456 F.3d at 761-62; *Sokol*, 430 F.3d at 421. In *Sokol*, the Seventh Circuit concluded that an insurer still had a duty to indemnify the insured although it had no duty to defend because there was no "suit" for damages, only a demand letter followed by a voluntary payment on part of the insured. The court concluded as much simply because the duty to defend and duty to indemnify were triggered by different events under the relevant policy's terms. *Sokol*, 430 F.3d at 421 ("This is a claim for indemnification coverage, and the coverage grant pertaining to indemnification does not contain the same limiting language requiring the existence of a 'suit.'"). Old Republic attempts to distinguish *Sokol* by noting that *Sokol*, unlike this case, featured a voluntary payment and not an alternative dispute resolution process. But that is a distinction without a difference—as evidenced by Old Republic's failure to explain the legal significance of this purported

---

the insured for any liability past the primary insurer's insurance limits. *See id*. at 525. In view of its acknowledgment that in some fact contexts the duties to defend and to indemnify are independent, its failure to acknowledge *Keystone* and *Sokol*, and its status as dicta, this court does not read *Momence* to overrule *Keystone* and *Sokol sub-silentio* by holding that there is never a duty to indemnify where there is no duty to defend.

distinction. Moreover, the administrative process in this case ended in a settlement—essentially, a voluntary payment akin to the one at issue in *Sokol*. Confronted with an insurance policy with language nearly identical to the policies at issue here, the *Sokol* court concluded that the absence of a duty to defend does not preclude a duty to indemnify. The court reaches the same conclusion here.

### III.    Contractual Liability Exclusion

Old Republic next argues that it has no duty to indemnify Kenny because the Final Decision is based exclusively on Kenny's breach of contract, which is excluded under the CGL policies. The contractual liability exclusion reads: "This insurance does not apply to . . . 'property damage' for which the insured is obligated to pay damages by reason of the assumption of liability in a contract or agreement." Old Republic-Meccon Policies, ECF Nos. 25-29. There is, however, an exception to this policy for "damages . . . [t]hat the insured would have in the absence of the contract or agreement." *Id*. It is Old Republic's position is that the Final Decision exclusively contemplates contractual liability, rendering the exclusion applicable.

The Final Decision is the only portion of the record that meaningfully discusses the basis for USACE's claims against Kenny. This is problematic, because a "Final Decision" represents only the beginning of USACE's administrative procedure. A Final Decision is merely a report drafted by a contracting officer providing reasons to justify the assertion of a claim against a contractor. 41 U.S.C. § 7103. Although the Final Decision at issue here makes certain factual findings, it is not clear that those findings are complete, as Final Decisions do not require "specific findings of fact." 41 U.S.C. § 7103(e).  Moreover, it is only the appeals process—not the drafting of the Final Decision—that is more akin to a formal proceeding, with provisions for pleadings from the involved parties, discovery, prehearing briefing, and the taking of evidence.

33 C.F.R. § 210.5. Because Kenny and USACE settled before the appeals process ran its course, however, the court is left with only the Final Decision to determine whether USACE's claims would have existed absent a contract or agreement.

"The burden is on the insurer to prove a limitation of exclusion applies." *Country Mut. Ins. Co. v. Bible Pork, Inc.*, 2015 IL App. (5th) 140211, ¶ 38, 42 N.E.3d 958, 969 (Ill. App. Ct. 2015). "Where an exclusionary clause is relied upon to deny coverage, its applicability must be free and clear from doubt." *Id*. Here, the Final Decision is less than clear about the legal bases for USACE's claim against Kenny. After detailing Kenny's submissions to USACE with regard to the Smith-Blair clamps, the Final Decision notes that Kenny "negligently certified that the clamp was in compliance with contract specifications except as specifically noted, and then failed to note that the psi rating for the clamp was not in compliance with contract specifications. Thus KCC's negligent certification violated the requirements of [the USACE/Kenny contract]." Final Decision 8, ECF No. 54-5. The Final Decision concluded that "KCC is [] jointly and severally liable for the damages associated with the underrated clamp, because it failed to note that the proposed clamp had a psi rating that was a significant variation from the specification requirements." Final Decision 9, ECF No. 54-5.

The Final Decision refers to Kenny's negligence—which suggests that USACE's claim sounds in tort—albeit in the context of certification of compliance with contractual standards. Regardless, the Final Decision's reference to Kenny's negligence suffices to render the Final Decision at least ambiguous as to the bases of USACE's claims. Under Illinois law, typically, "[f]ault is irrelevant to breach of contract. Whether one intentionally, carelessly, or innocently breaches a contract, he is still considered to be in breach of that contract and the extent of his liability is generally the same." *Album Graphics, Inc. v. Beatrice Foods Co.*, 87 Ill. App. 3d 338,

350, 408 N.E.2d 1041, 1050 (Ill. App. Ct. 1980). A reference to Kenny's negligence, then, would be gratuitous if the basis of USACE's claims was wholly contractual. Moreover, Illinois has adopted Restatement (Second) of Torts § 311, governing negligent misrepresentation involving risk of physical harm. *See Bd. of. Ed. of City of Chicago v. A, C & S, Inc.*, 131 Ill.2d 428, 455-56, 546 N.E.2d 580, 592-93 (Ill. 1989). Section 311 notes "[o]ne who negligently gives false information to another is subject to liability for physical harm caused by action taken by the other in reasonable reliance upon such information, where such harm results . . . to the other." The Illinois Supreme Court has interpreted "physical harm" to include property damage. *See A, C & S*, 546 N.E.2d at 593. The Final Decision's allegations that Kenny negligently told USACE that the Smith Blair clamps met the project's specifications, resulting in property damage, appear to fall directly within § 311's ambit, potentially subjecting Kenny to liability even if compliance with the specifications was not a contractual requirement.

Although the Final Decision unambiguously references Kenny's violation of multiple contractual provisions, it contains no language suggesting that those violations constituted USACE's only bases for relief. Consequently, Old Republic has failed to meet its burden to prove, beyond doubt, that the contractual liability exclusion applies.

## IV. Completed Operations Provision

Next, Old Republic argues that Kenny is covered under neither the ongoing operations nor completed operations additional insured endorsements to the CGL policies. Old Republic maintains that Kenny cannot be covered under the ongoing operations endorsements because the record contains no evidence that any damage occurred while Meccon was still working on the McCook Project. But when the damage occurred is of no moment because Kenny is, contrary to

Old Republic's position, an additional insured under both the ongoing operations and completed operations endorsements.

Both the ongoing and completed operations endorsements note that additional insured contractors include "all persons or organizations as required by contract or agreement." Old Republic-Meccon Policies, ECF Nos. 25-29. Old Republic argues that the completed operations endorsements—unlike the identical ongoing operations endorsements—condition coverage on the allegedly covered entity being named a required additional insured on the subcontract specifically for completed operations purposes. In Old Republic's view, because the subcontract never mentions completed operations, Kenny is not covered for damage occurring after Meccon completed its work on the project even if Kenny is a required additional insured for damages occurring during ongoing operations.

The only authority Old Republic points to in support of its position is *St. Katherine Insurance Co. Ltd. v. Insurance Co. of North America, Inc.*, 11 F.3d 707 (7th Cir. 1993). But *St. Katherine* merely made a factual observation that most CGL policies do not contain completed operations coverage. Here, of course, the court is confronted with actual CGL policies that contain completed operations coverage, and also contain language the court can interpret to determine if Kenny is covered. The terms of the actual CGL policies—not abstract observations about the nature of CGL policies generally—govern the extent of coverage in this case.

The language of the CGL policies provides no basis to distinguish between ongoing operations and completed operations coverage in determining whether Kenny is an additional insured. It is axiomatic that "[i]n the construction of insurance policies, it is a general rule that absent language to the contrary, a word or phrase in one part is presumed to have the same meaning when it is used in another part of the policy." *Hartford Acc. & Indem. Co. v. Case*

*Found. Co.*, 10 Ill. App. 3d 115, 123, 294 N.E.2d 7, 13 (Ill. App. Ct. 1973). Here, the ongoing and completed operations endorsements use identical language to define additional insured contractors: "all persons or organizations as required by contract or agreement." Old Republic-Meccon Policies, ECF Nos. 25-29. This language never indicates that the underlying contract must require that the general contractor be an additional insured for any particular purpose. Old Republic supplies no rationale for limiting the coverage of an additional insured to ongoing operations and to read such a requirement into the CGL policies' ambiguous definition of additional insureds (*see* Section I, above) would be unfaithful to the court's obligation to construe ambiguous insurance policies "in favor of the insured and against the insurer who drafted the policy." *Outboard Marine Corp. v. Liberty Mut. Ins. Co.*, 154 Ill.2d 90, 107, 607 N.E.2d 1204, 1212 (Ill. 1992). The court therefore concludes that Kenny is an additional insured under both the ongoing and completed operations endorsements.

## V.      Whether Meccon's Work Caused Kenny's Liability

Finally, Old Republic argues that it has no duty to indemnify Kenny because Kenny's liability does not arise from Meccon's work on the McCook Project. Both the ongoing operations and completed operations endorsements on the CGL policies limit Old Republic's liability to "'property damage' caused, in whole or in part, by [Meccon's] work.'" Old Republic points out that the Final Decision does not mention Meccon, and exclusively identifies Kenny's improper certification of the Smith-Blair clamps as the basis for its decision. Old Republic consequently argues that the CGL policy does not cover Kenny's liability here, which it believes is based exclusively on Kenny's own negligence as opposed to Meccon's work.

Old Republic's argument is unpersuasive. The undisputed fact that Meccon's request to use the Smith-Blair clamps directly resulted in Kenny's allegedly negligent submission to

USACE is, as a matter of law, a sufficient causal connection to bring Kenny's claim within the ambit of the endorsements. Analyzing similar insurance policy language, the Appellate Court of Illinois has noted that "*any* causal connection between [the subcontractor's] work and the liability is sufficient to establish [the general contractor's] status as an additional insured." *Patrick Eng'g, Inc. v. Old Republic Gen. Ins. Co.*, 2012 IL App. (2d) 111111, 973 N.E.2d 1036, 1045-46 (Ill. App. Ct. 2012). It is undisputed that, here, Meccon's request to use Smith-Blair clamps was a but-for cause of Kenny's liability.

Old Republic maintains that *Patrick* and the other cases cited by Kenny are distinguishable because the policies in those cases covered damages "arising out of" the subcontractor's work, while the CGL policies cover damages "caused by" Meccon's work. *See Patrick*, 973 N.E.2d at 1045-46; *see also Cas. Ins. Co. v. Northbrook Prop. & Cas. Ins. Co.*, 150 Ill. App. 3d 472, 475, 501 N.E.2d 812, 814 (Ill. App. Ct. 1986). This, however, is a distinction without a difference. Like the "arising out of" language, the phrase "caused by" is "both broad and vague"—because causation can refer to either but-for or proximate causation—and "must be liberally construed in favor of the insured." *Northbrook*, 501 N.E.2d at 814.[6] Both the *Patrick* and *Northbrook* courts treated the "arising out of" language as though it required some level of causation; the question before these courts was the precise level of causation required and both concluded that, under Illinois law, "'but for' causation, not necessarily proximate causation, satisfies this language." *Northbrook,* 501 N.E.2d at 814 (quoting *Maryland Cas. Co. v. Chicago*

---

[6] Old Republic also argues that the *Northbrook* court distinguished the phrase "arising out of" from "caused by," asserting that the latter inheres a fault requirement. *Northbrook*, however, made no such distinction. In *Northbrook*, the court explained that a policy that required indemnity only for "acts or omissions of the named insured" required fault on the named insured's part. 501 N.E.2d at 814-15. The court never ruled that the phrase "caused by" requires or even implies a fault requirement. To the contrary, the court held that coverage applied "***regardless of the role of any acts or omissions***" of the named insured. *Id.* at 815 (emphasis added).

& N. W. Transp. Co., 126 Ill. App. 3d 150, 154, 466 N.E.2d 1091, 1094 (1984)). *See also, e.g.*, *Santa's Best Craft, LLC v. St. Paul Fire and Marine Ins. Co.*, 611 F.3d 339, 348 (7th Cir. 2010) (under Illinois law, policy exclusion of conduct that "results from" specified conduct implicates "but for" causation); *Transamerica Ins. Co. v. South*, 975 F.2d 321, 329 n.6 (7th Cir. 1992) (recognizing that under Illinois law the term "arising out of" has been "construed frequently in workmen's compensation claims and in insurance litigation to mean that a mere causal connection suffices to bring facts within the ambit of an insurance clause which is prefaced with that phrase."); *Elec. Ins. Co. v. Nat'l Union Fire Ins. Co. of Pittsburgh*, 346 F. Supp. 2d 958, 966 (N.D. Ill. 2004) ("The phrase 'arising out of' is broad, vague, liberally construed in favor of the insured, and satisfied by 'but for' causation."). Consequently, as in *Patrick* and *Northbrook*, the court concludes that "but for causation, not necessarily proximate causation," satisfies the "caused by" language in the CGL policies. *Id.*

Old Republic also supports its position with a citation to *Lincoln Gen. Ins. Co v. Fed. Const., Inc.*, No. 09 C 6087, 2010 WL 4978852 (N.D. Ill. Dec. 2, 2010), where the court concluded that an additional insured provision stating that the insurer would be liable for damages "caused, in whole or in part, by" the named insured's "acts or omissions" provided coverage only for the named insured's negligent acts. But *Lincoln General* appears to rely on a misreading of the Illinois Supreme Court's decision in *Virginia Surety Co. v. Northern Insurance Co. of New York*, 224 Ill.2d 550, 866 N.E.2d 149 (Ill. 2007). In *Virginia Surety*, the Court did not read a fault requirement into the relevant contract's "caused by" language; it simply noted that the contract had a fault requirement because it explicitly required indemnity only where damages were "caused in whole or in part by ***negligent*** acts or omissions of the Subcontractor." 866 N.E.2d at 159 (emphasis added). Old Republic's reliance on *Lincoln General* is therefore

misplaced. Because Meccon's requests to use Smith-Blair clamps were a but-for cause of Kenny's liability, Old Republic's assertion that Kenny's liability was not "caused by" Meccon's work on the McCook Project must be rejected.

*    *    *

Although the absence of a "suit" means that Old Republic has no duty to defend Kenny, Old Republic has not identified a limitation or exclusion that would preclude its duty to indemnify Kenny. Consequently, Old Republic's motion for summary judgment is granted as to the duty to defend but denied as to the duty to indemnify. Kenny's motion for summary judgment is granted as to the duty to indemnify, but denied as to the duty to defend.

Dated: October 31, 2017

John J. Tharp, Jr.
United States District Judge